Our final case for today is United States against Baltazar. Mr. Melisa. Good morning. May it please the court. Johannes Melisa from the Federal Defender's Office for the Central District of Illinois, representing Mr. Juan Baltazar. In this case, the district court imposed a one-year term of supervised release, which is the maximum allowable term under the statute, in whole or in part, based upon the misapprehension of the law that the status of being on supervised release as an undocumented immigrant could be used as a, quote, shield against either arrest or prosecution. So, Mr. Melisa, I totally agree that the district court said some very bizarre things in the course of this sentencing, but suppose we were to understand what it's saying, maybe not as felicitously as it should have been, that as long as he's on supervised release, he can't be rearrested for the same 1326A violation that's the subject of his criminal sentence. That he's somehow still serving that sentence and he's out with the permission of the court. So he can't be said to be, you know, he can't have ICE agents hovering on his doorstep every morning when he comes out to get the newspaper. If that's what the judge means, is that correct under the law? Does that mean that any other comments the judge made were basically harmless? Well, Your Honor, first I would say that if that's what the judge means, the judge probably could have said that, but that's not what the judge said. The judge actually made a reference, as I recall, to the supremacy clause, which indicated that it seemed that perhaps state officers or somebody else might have been arresting Mr. Juan Baltazar. But I actually think, as I noted in the brief, there is a Ninth Circuit case that suggests this is actually a live question. And my concern at the sentencing hearing was that particular issue. And furthermore, I think it kind of, if the court stated desire, which he stated at the end of the sentencing hearing was to help him get deported, there are means to do that through supervised release. Well, ICE normally just lodges a detainer with whoever the custodian is so that when the person's finished serving, whatever their term may be for whatever they did, 1326 or anything else, they don't just go out on the street. They get turned over to the custody of ICE. ICE does, Your Honor, but as was mentioned at the sentencing hearing, that there was no detainer that we knew of at the time. And sometimes things fall through the crack. In fact, the United States argued at the hearing that if ICE didn't lodge a detainer, and under the Illinois Trust Act, it would mean that certainly probably every defendant in this situation would need to have supervised release, which kind of goes contrary to the advisory guidelines, 5D1.1c, which says in the ordinary case, supervised release shouldn't be imposed. Do we know where he is now? You're both asking the same question. Your Honor, I have no reason to believe that Mr. Finland's, the government's assertion in his brief is incorrect. So I do believe he has returned home. He's back in Guatemala? Yes, Your Honor. So it's a case boot? No, it's not, Your Honor, because as I noted in my reply brief, there is a scenario under which Mr. Juan Balthazar could return to the United States from the Immigration and Naturalization Act. The Attorney General has the authority to allow a removed alien to return to the United States. So what happens in that instance? Maybe the government can answer this question too. If, let's suppose he spends, he had a year of supervised release, and let's suppose for the sake of making this simple, he is sent to Guatemala the day his supervised release begins. So there's a year to run. And two years later, he gets the permission of the Attorney General to come back to the United States. So it's more than a year. Does he now have a year of, is it told basically? Does he have a year of supervised release to serve after he comes back with the permission of the Attorney General? Or does the year just run out while he's gone, and so he comes back a free man? I can't give you a specific answer, Your Honor. Because no one ever gets the permission of the Attorney General. Well, Your Honor, my understanding is that it's running as we speak. But, of course, the Mobley and Thompson decisions in the long line make clear that being under a sentence of supervised release is itself a restriction on liberty. And that's the prejudice that Mr. Juan Baltazar would be facing. So if he does come back, he would have this continuing issue hanging over his head. Right. What do we do? Wouldn't he be, oh, sorry. What do we do? Do we remand for resentencing? Yes, Your Honor. That's what we're requesting. And so does he have to come back and be here when he's resentenced? Your Honor, there are circumstances where I think he could be resentenced via audio or video link, and we would request that of the court. I've seen that happen in other circumstances, such as when an individual is resentenced on a Rule 35 motion. For instance, they might be in the custody of the Bureau of Prisons and not be physically present in the court. So we would ask for that sort of… So at resentencing, what if the judge says, okay, time served? As far as supervised release, Your Honor? Yeah. Well, Your Honor, our contention… That's what you want, right? You want to erase the supervised release. That's what we're asking for. Our contention is that the judge would have to make certain findings or at least apply an accurate statement of law. There again, it goes if he's here or there, I guess. Yes, Your Honor. I really don't understand why the term of supervised release wouldn't be appropriate even if he, you know, does return, given his criminal history. I mean, at that point, wouldn't he be similarly situated with any defendant who's completed a prison term but hasn't been deported? Well, Your Honor, that is something that the district court could have said or a court sentencing Mr. Juan Balthazar could have said. As you know, that there are factors under 3553A that should be considered. But in the sentencing hearing, and the record reflects this, that when the district court referenced his criminal history, he had a hard stop between referencing the criminal history with regard to custody. And then I believe he said, and now on to supervised release. So it's not clear from the record that the district court was discussing his criminal history in relationship to the imposition of supervised release. And so for that reason, we think that remand for resentencing would be appropriate. Okay. Just to call your attention to prior cases, the Higdon case, which was referenced in the brief, where the appearance of errors or where the record wasn't clear that the district court had correctly apprehended the law, warranted resentencing. And unless the court has any further questions at the moment, I would save the rest of my time for rebuttal. That would be fine. Mr. Finlan. Mr. Finlan, can you answer my question? What happens to supervised release while Mr. Baltazar is down in Guatemala? Is it just suspended or is it ticking away? Good afternoon, Your Honor. My impression is that supervised release is ticking away. So he just has to live, even though he's not under any U.S. authority supervision at the moment, presumably, because he's in Guatemala. After a year goes by, he's done with his supervised release. That is my impression. Is there any law about this anywhere? I'm not aware of any. My impression was that the district court stated correctly that the supervised release in the court's jurisdiction ends at the borders of the United States. Well, I agree with that, but I was just wondering if you left the borders of the United States, did it just get put on hold until you come back when you're back into the United States? As I said, hypothetically, you know, with the Attorney General's permission and all the right hoops have been jumped through. Or is it just erased after the time period elapses? Your Honor, in fairness, I do not know. It's just my impression that because the term of imprisonment followed by a term of supervised release is one continuous sentence, the idea that because the term of imprisonment would terminate, in this case, I believe around September of this year, that the term of supervised release would be stayed until he could physically comply. My impression is that it would follow immediately once the term of imprisonment ends, and then it continues for that additional year. For that term, okay. And so my other big question for you is whether, I mean, the district judge, you have to admit, says some very strange things in the course of this sentencing hearing. And I'm wondering if the government's prepared to accept the Mesa v. Arreo position that when you have these 1326A prosecutions, once you've prosecuted the person for an illegal entry, you're done, and you can't prosecute them again for another, for being found in the United States without permission. Let's suppose Mr. Baltazar served his year of supervised release in the Central District of Illinois, and for whatever reason ICE didn't lodge a detainer against him, and so he just hangs out in the Central District of Illinois. And now the government arrests him again. Is it your position that that, without his leaving the United States, this new arrest is all right? And if you think that, then do you think the government could arrest him while he's on supervised release for the 1326A violation? Under your hypothetical, is the government arresting him for a 1326A? For the same entry that caused, for the same event of being found that was the predicate of the prosecution. No, the government couldn't do that. And the reason being is because one of the elements of an illegal reentry is a reentry. So if he's already been prosecuted for a reentry, he cannot, again, the Double Jeopardy Clause would prevent him from, again, being prosecuted for that same. So it's not enough to be found. There also has to be a new reentry. Yes, you're right. So that's more or less what the Ninth Circuit said. And that's my impression. I think it's akin to an overstayed visa, where a defendant hasn't reentered under 1326, but they've stayed past their visa. In which case, they wouldn't be made a criminal defendant. It would fall under the Article II courts, where now they're in violation of the immigration laws, and they're simply processed by the immigration system. They just get removed as opposed to indicted. Criminally charged. Yes, Your Honor. And so, and granted, the district court did make some comments that are not helpful, but— I mean, the district court made it sound like it was your king's ex, that you could go rob a bank while you were on supervised release, and you couldn't be touched. Importantly, what the district court said in their discussion was they cannot be prosecuted for the same offense. And that was when defense counsel said, I'm worried about him getting picked up again. The court said, well, not for the same offense. It's clear that the district court knew that he wasn't giving a carte blanche, I have the authority to give you immunity from all prosecutions of all crimes. That's actually what happened in Texas. In Texas, they hover by the door of the prison and just re-arrest somebody as they walk out. Well, and they wouldn't be charged criminally in this case if he would be arrested probably by ICE and then processed through the immigration system for removal. I'm not sure that's what happened in the Texas case, but— Anyway, if he robbed a bank while he's on supervised release, he's not insulated. No, no, of course not. Certainly not. And the judge said things that made you think the judge thought that, which couldn't possibly be the law. Well, and the other evidence that shows that that wasn't the judge's thinking is that the judge imposed a term of supervised release, or condition of supervised release, I should say, that he not commit another federal, state, or local crime. Now, if the judge really believed that he was immunizing Mr. Baltazar, Juan Baltazar, from further prosecution, that condition would be superfluous. Because he imposed a condition that said, as a condition of your supervised release, do not commit another federal, state, or local crime, there's evidence that the judge didn't really believe that he was giving this carte blanche immunity. We believe that the court committed no error in its sentencing and that the explanation offered was sufficient. For those reasons, unless this panel has additional questions for me, we'd request that the court affirm in all respects. All right. Thank you. Mr. Melisa. Your Honor, to note one thing as I heard the discussion here, and this is another discussion that actually showed up in the briefs as well as at the sentencing hearing, there's a conflation right now of arrest and prosecution. The district court did say he can't be arrested. I think he said you can waive your supervised release paperwork and say, no, I'm good. Now, of course, one doesn't get to raise any of these double jeopardy defenses or any other defense until one has already been arrested and then prosecuted and then you're sitting in front of a tribunal. The more likely thing is the officers would say, okay, you're an undocumented immigrant with a felony conviction and you're on supervised release. We'll arrest you and then the lawyers can sort out any defenses or affirmative defenses you may have to these charges. And so I think that's one of the things that the government misses in regards to our argument is that it was said that imposing supervised release would be a shield to going back to jail. I don't see how it hurts your client, though. I guess that's one problem I've had with this case, especially now that Mr. Juan Baltazar is back in Guatemala. What is the harm that he's experiencing because he's got this one year supervised release term? Well, I don't want to get into any potential immigration claims he may have. But I would say that if he did come back to the United States on the attorney general's permission, after you said after jumping through the necessary immigration hoops, he would be under this restricted liberty. It would have to be pretty quick, though. I mean, I don't know that the ICE people or the CIS or anybody else in that group works that fast. It would all have to happen inside this one year of supervised release. Cases can finish within one year, though. All right. Well, that's an optimistic thought. And the only other thing I'd note, Your Honor, is you're talking about agents hovering as you walk out. That actually happened to Mr. Juan Baltazar to bring about this case. He was walking out of a state courthouse, and agents were hovering. So it was kind of on the mind at the time of the hearing. Unless you have any further questions, I have nothing more, Your Honor. I see none, so no. Thank you very much. Thanks as well to the government. We will take the case under advisement, and the court will be in recess.